IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JANET JAMES, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:20-CV-387 (MTT) |
| | ) |
| GREAT WEST CASUALTY COMPANY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

On January 31, 2020, Plaintiffs Janet James and Naisha Lattner filed this personal injury action against Great West Casualty Company, David Phillips Trucking Company, James Jackson, John Doe, and John Doe LLC in the State Court of Bibb County. *See generally* Docs. 1-1; 6-2; 11-1. The Defendants say they did not immediately remove the case to federal court because the complaint lacked information sufficient to allow them to determine whether the amount in controversy was present. Docs. 1; 7 at 2-9. Instead, they served discovery to gather information about the Plaintiffs' injuries and damages. Docs. 1-1 at 43-46; 6-3; 7 at 11; 7-1; 7-2; 7-6; 7-8; 7-9. After a period of back and forth, the Defendants would say cat and mouse, the Defendants removed the case on October 2, 2020. Doc. 1. Plaintiffs then moved to remand. Doc. 6. The motion is **DENIED**.

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction … to the district court of the United States for the district and division

embracing the place where such action is pending." If removal is based on a document other than the initial pleading, such as discovery responses, the defendant must file the notice of removal within thirty days of service of the document. 28 U.S.C. § 1446(c)(3)(A). "For removal to be proper, the removing party must establish federal subject matter jurisdiction at the time the notice of removal is filed." *Cross v. Wal-Mart Stores, E., LP*, 2011 WL 976414, at *1 (M.D. Ga.) (citing *Leonard v. Enterprise Rent-A-Car*, 279 F.3d 967, 972 (11th Cir. 2002)). The party seeking removal bears the burden of establishing federal jurisdiction. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010) (citations omitted).

Diversity jurisdiction exists if the opposing parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Where "the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Pretka*, 608 F.3d at 752 (internal quotation marks and citation omitted). The removing defendant may satisfy this burden by showing it is "facially apparent" from the complaint that the amount in controversy exceeds $75,000, "even when the complaint does not claim a specific amount of damages[,]" or with the use of additional evidence demonstrating that removal is proper. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (internal quotation marks and citations omitted). The "jurisdictional amount" must be "stated clearly on the face of the documents before the court, or readily deducible from them." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1211 (11th Cir. 2007). If the evidence is ambiguous, "neither the defendants nor the court may speculate in any attempt to make up for the notice's

failings." *Id.* at 1214-15.  However, "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements."  *Roe*, 613 F.3d at 1062.  Any uncertainties should be resolved in favor of remand.  *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (citations omitted).

## I. DISCUSSION

In their complaint, the Plaintiffs allege they "incurred expenses in the nature of medical bills from the date of the accident until filing [their] Complaint."  Doc. 1-1 at 4.  The Plaintiffs also claim they "incurred lost wages and may continue to incur economic loss in the form of diminution in earning capacity and lost wages."  *Id.*  But the Plaintiffs did not allege the nature of their injuries or the amounts of their special damages.  *Id.* at 1-5.  Because it was not facially apparent from the complaint that the Plaintiffs' damages exceeded $75,000, the Defendants engaged in discovery to establish the amount in controversy.

First, on March 6, 2020, the Defendants asked the Plaintiffs to identify and explain their injuries and to "itemize all special damages."  Docs. 7-1 at 8-9; 7-2 at 8-9.  James and Lattner responded on April 6, 2020, and May 26, 2020, respectively.  Docs. 1-1 at 53-55, 59-61; 6-6; 11-2; 11-4 at 60-62, 66-68.  James said that she "sustained injuries to her neck, lower back and right hip, which required a total hip replacement to repair."  Docs. 7-3 at 5; 11-3.  James also said that she incurred $380 in expenses from Navicent Medical Center and continued to receive treatment from OrthoGeorgia.  Docs. 7-3 at 5; 11-3.  James said that she had not received the final bills from her providers but would supplement her responses after she received them.  Docs. 7-3 at 5; 11-3.  In

the document requests, the Defendants requested treatment records and medical bills related to injuries sustained from the incident. Docs. 7-1 at 16-17; 7-2 at 16-17. James responded that she was "producing all documents currently in her possession" and would supplement her responses once she obtained additional documents. Docs. 6-7 at 3; 7-3 at 12.

Continuing their efforts to tie the Plaintiffs down on their injuries and damages, the Defendants served requests for admissions on July 22, 2020. Docs. 7-6; 11-4 at 69-70. One request asked the Plaintiffs to admit that they would not execute a judgment over $75,000. Docs. 6-9 at 1-2; 7-6 at 5. Another asked the Plaintiffs to admit that they would not seek damages over $75,000. Docs. 6-9 at 2; 7-6 at 6. In their August 4 responses, the Plaintiffs refused to admit anything regarding the amount in controversy. Docs. 6-9; 7-7. Instead, they repeatedly claimed they could "neither admit nor deny [that the amount in controversy, exclusive of interest and costs, in this matter exceeds $75,000, and] plaintiffs have not made a determination at this time, nor are they required to, as to what amount they are seeking to recover." Docs. 6-9; 7-7.

Clearly frustrated, Defense counsel sent on July 22 a good faith letter to Plaintiffs' counsel requesting appropriate discovery responses. Doc. 7-5. The letter made clear the information the Defendants lacked:

> Plaintiff James produced medical records from OrthoGA with her initial discovery responses that indicated that Ms. James had elected to proceed with a right hip arthroplasty. However, James'[s] document production is devoid of any medical records indicating that the procedure was performed or billing records related to any such procedure. Plaintiff has also not supplemented her production to include these records to date.
>
> Defendants hereby demand Plaintiff James'[s] production of responsive medical and billing records related to her right hip arthroplasty

> procedure by e-mail, if such a procedure was performed, no later than 5:00 p.m. on Wednesday, July 29, 2020. Further, Defendants request supplementation of Plaintiff James'[s] medical records with all medical records for any diagnoses or treatment—not previously produced—that Plaintiff James is claiming as part of her damages. If complete documents are not received by the deadline above, Defendants will seek the Court's intervention into this discovery dispute.

*Id.* at 1. Plaintiffs' counsel did not respond. Docs. 7-5; 7 at 16; 13 at 11.

On August 12, 2020, the Defendants served non-party requests for production of documents on OrthoGeorgia and Navicent Health. Docs. 7-8; 7-9. James's providers produced medical records throughout the following month. On September 3, 2020, Navicent produced James's medical records, which provided details of her right hip procedure. Doc. 13 at 12-13. On September 15, Navicent also produced medical bills related to James's surgery. *Id.* On September 28, OrthoGeorgia produced additional records regarding James's right hip replacement. *Id.* Navicent Health and OrthoGeorgia produced records revealing that James underwent a full right hip replacement and that her medical bills totaled well over $50,000, far more than the $380 she identified in her April 6, 2020 discovery response. Docs. 1-2; 7-3 at 5; 7-13 at 4-7; 11-3. Based on this information, Defendants concluded that they had established the requisite amount in controversy and removed the case to federal court on October 2, 2020. Doc. 1.

In their motion to remand, the Plaintiffs argued that the Defendants had not established the requisite amount in controversy because the "Defendants have only provided the Court with conclusory allegations, specifically damages in the amount of $64,973.47." Doc. 6-1 at 5 (footnote omitted). The Plaintiffs also argued that removal was untimely because Defendants "chose to forego" removal for six months after receipt

of the April 6, 2020 discovery responses.  *Id*. at 7.  There were obvious problems with both arguments.  First, every personal injury lawyer knows that medical expenses of $64,000 in a personal injury case establishes beyond any doubt that the amount in controversy exceeds $75,000.  Second, the Defendants did not base removal on the discovery responses they received on April 6.  Doc. 13 at 12-13.  Rather, they based removal on the records they received in September not from the Plaintiffs but from the Plaintiffs' medical providers, which included, for the first time, James's medical records and bills concerning her right hip replacement.  *Id*.

When the Defendants pointed this out, the Plaintiffs regrouped and attacked on a different front in their reply brief.  Doc. 11.  First, they wisely dropped their argument that their claims did not place in issue the requisite amount in controversy.  *Id*. at 1.  Second, they do not dispute that the Defendants based removal on the non-party records they received September 3-28, 2020.  Their new argument is that the following language in an April 6, 2020 interrogatory response started the removal clock: "[a]s a result of the subject incident, [James] sustained injuries to her neck, lower back and right hip, which required a total hip replacement to repair."  *Id*. at 2 (footnote omitted).  Citing *Neal v. Scarborough*, 2018 WL 4521029 (M.D. Ga. 2018), the Plaintiffs argue that experience and common sense dictate that had the Defendants coupled the Plaintiffs' prayer for relief and the April 6 interrogatory response, they "undoubtedly should have known that the amount in controversy exceeds the jurisdictional threshold."  Doc. 11 at 5 (footnote omitted).  That argument is without merit.

First, *Neal*, if anything, favors the Defendants.  There, the plaintiff was attacked by the defendants' dogs and, as a result, underwent surgery.  *Neal*, 2018 WL 4521029,

at *1.  The plaintiff alleged in her complaint medical expenses of $28,028.56, lost wages totaling $31,512.23, and sought recovery for past and future medical expenses and lost wages, and past and future physical and mental pain and suffering.  *Id*.  The Defendant did not immediately remove but rather conducted discovery to flesh out the amount in controversy.  *Id*.  That was a mistake; the complaint provided more than enough flesh.  *Id*.  Removal, the Court held, was untimely because it was "facially apparent from the [p]laintiff's complaint that the amount in controversy exceed[ed] $75,000."  *Id*. at *2 (citation omitted).  Only "common sense" was necessary to determine that the complaint facially established the requisite amount in controversy.  *Id*. at *3 (citation and footnote omitted).

The Plaintiffs argue that their case "similarly mirrors" *Neal*.  Doc. 11 at 5.  It does not.  Unlike the complaint in *Neal*, the Plaintiffs' complaint is devoid of any information that would allow any estimate of the amount in controversy.[1]  Docs. 1; 1-1.  Then, unlike the plaintiff in *Neal* who fully disclosed her injuries and damages, the Plaintiffs engaged in tactics clearly designed to thwart removal.  For example, James said she had incurred $380 in medical expenses but promised to supplement that information.  Doc. 7-3 at 5.  She never did, notwithstanding the Defendants' good faith attempt to get, specifically, information regarding James's hip surgery.  Doc. 7-5.  Only when the Defendants requested records directly from James's medical providers were they able to determine with sufficient certainty that the amount in controversy exceeded $75,000.  Doc. 13 at 12-13.

---

[1] A case much more apt is *Minix v. American Inter-Fidelity Exchange*, 2019 WL 3318117 (M.D. Ga. 2019).  There the Plaintiffs' attorneys employed the same tactics they used here to avoid removal.

Nor does the Court find any merit to the argument that the spare April 6 reference to James's hip surgery started the removal clock. Doc. 11 at 2. A cynic could easily conclude that this response and the disclosure of medical expenses of $380 was designed to withhold sufficient information to form a basis for removal but at the same time, reveal enough to allow the Plaintiffs to make the argument they now make. Given the Plaintiffs' refusal to give up more than these two tidbits, the Defendants continued efforts, in the face of stiff resistance, to get the evidence they needed is both understandable and justified.

In short, the Court concludes that the Defendants removed to federal court within thirty days of receipt of information allowing a reasonable determination that the amount in controversy exceeded $75,000.[2]

## II. CONCLUSION

For the reasons discussed above, the Plaintiffs' motion to remand (Doc. 6) is **DENIED**.

**SO ORDERED,** this 4th day of February, 2021.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[2] I well understand, based on my experience, the importance of forum, particularly in personal injury cases. I do not criticize reasonable efforts to choose or keep a desired venue or forum. But sometimes those efforts can be counterproductive. When a plaintiff aggressively resists disclosing discoverable information, she, if anything, expands a defendant's temporal opportunities to remove. When a defendant is forced to fight for every scrap of information, it can become difficult to say when the scraps mount to a point that starts the removal clock. In fixing that point, equity and discretion will favor the defendant.